UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| STEVEN SMYRNI,<br><br>             Plaintiff,<br>   v.<br><br>US INVESTIGATIONS SERVICES LLP PLAN; LIFE INSURANCE COMPANY OF NORTH AMERICA, Real Party in Interest,<br><br>             Defendants.<br>_____/ | No. C 08-04360 PJH (MEJ)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S "OMNIBUS MOTION FOR INTEREST, FOR ORDER DETERMINING THAT TAX RETURNS NEED NOT BE PRODUCED AND FOR DISCLOSURE OF DOCUMENTS"**<br>**(DKT. # 44.)** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Steven Smyrni's Omnibus Motion asking the Court (1) to award Plaintiff prejudgment interest on the back benefits already paid to him; (2) to deny Life Insurance of North America's ("LINA") requests for Plaintiff's tax returns for 2006, 2007, and 2008; (3) to order LINA to produce the claims manual upon which it relied for his disability determination; and (4) to order Defendants to produce certain surveillance records. (Dkt. #44.) On September 24, 2009, the Honorable Phyllis J. Hamilton, the presiding judge in this matter, referred the pending Motion to the undersigned for preparation of a report and recommendation. (Dkt. #53.) Defendant US Investigative Services LLP Plan ("the Plan") and LINA (collectively, "Defendants"), filed an Opposition to this Motion. (Dkt. #64.) Plaintiff did not file a reply. On January 21, 2010, the undersigned held a hearing on Plaintiff's Motion. After consideration of the parties' papers and

oral arguments, relevant legal authority, and good cause appearing, the undersigned **RECOMMENDS** as follows.

## II. BACKGROUND

Prior to filing a claim for long term disability benefits, Plaintiff worked as an investigative specialist for US Investigative Services, and participated in their employee welfare benefit plan, which is the named defendant in this action. (Defs.' Opp'n 1:26-28, Dkt. #64; Joint Case Mgmnt Statement 2, Dkt. #12.) The Plan was both insured and administered by LINA. (Defs.' Opp'n at 2:2-3.) LINA functioned as the claim administrator for benefit claims submitted under the Plan, and in this capacity, made final decisions on claims, made final decisions on appeals, and administered claims. *Id.* at 2:3-6.

On November 24, 2005, Plaintiff sustained an injury to his back and thereafter claimed total disability due to chronic low back pain. (Compl. ¶ 4, Dkt #1; Defs.' Opp'n at 2:6-7.) Plaintiff applied for short term disability benefits on December 5, 2009, which were granted. (Compl. ¶ 5, Dkt. #1.) Plaintiff received short term benefits for six months. *Id.* Plaintiff subsequently applied for long term disability benefits, but LINA denied his claim via a letter dated October 18, 2006. *Id.* at ¶ 6. Though LINA initially denied Plaintiff's claim for long term benefits, the claim was later approved on appeal and back benefits duly paid. (Defs.' Opp'n at 2:7-11.) On July 10, 2009, Plaintiff received back benefits from May 23, 2006 through June 30, 2009 in the amount of $70,143. (Padway Decl., Dkt. #45-10; 2/10/10 Jt. Statement, Dkt. #80.) However, while Plaintiff's appeal was still pending, he initiated this lawsuit on September 17, 2008.

## III. DISCUSSION

In his motion, Plaintiff asks the Court (1) to award prejudgment interest on the back benefits already paid to him; (2) to deny Defendants' requests for Plaintiff's tax returns for 2006, 2007, and 2008; (3) to order Defendants to produce to Plaintiff the claims manual relied upon by LINA; and (4) to order Defendants to produce certain surveillance records. (Pl.'s Mot. 1:5-20, Dkt. #44.) The undersigned shall address each of these issues in turn.

///

**A.     Plaintiff's Request For Prejudgment Interest**

First, Plaintiff argues that he is entitled to an award of prejudgment interest based on the initial denial of benefits, dating from June 2006 through to the award of benefits in July 2009. (Pl.'s Mot. 3:16-19, Dkt. #44). Specifically, Plaintiff argues that the Court should award interest at the rate of 18.99 percent, which Plaintiff terms his cost of borrowing, or, alternatively, 10 percent, the rate provided by California Insurance Code. *Id.* at 6:12-17. In response, Defendants argue that using the current Treasury Bill ("T-bill") interest rate prescribed under 28 U.S.C. § 1961 is an accurate estimate of what Plaintiff could have earned had he placed the back benefits in a savings account or similarly safe method of investment. (Defs.' Opp'n 5:6-8, Dkt. #64.)  As to the 10 percent rate, Defendants argue that ERISA preempts any application of the California Insurance Code. *Id.* at 5:24-27.

       1.     <u>Legal Standard</u>

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007). "[M]oney has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 922 (9th Cir. 1995) (internal citations omitted). Thus, an award of prejudgment interest serves as an element of compensation, not as a penalty. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). Whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities. *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (internal citations omitted). Among the factors to be considered in determining whether prejudgment interest should be awarded is the presence or absence of bad faith or ill will. *Id.* Additionally, courts may consider whether the award of prejudgment interest would put a financial strain on the defendant. *Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir. 1985). In determining the appropriate rate, the Ninth Circuit has held that "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of

1 pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that
2 particular case require a different rate." *Gross-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154,
3 1164 (9th Cir. 2001).

### 2. Application to the Case at Bar

Here, the undersigned finds an award of prejudgment interest appropriate in this case as compensation for the reasonable losses suffered by Plaintiff as a result of the initial denial of benefits. The undersigned also notes that Defendants do not provide any argument with legal support that Plaintiff is not entitled to an award of prejudgment interest. However, the parties dispute the appropriate interest rate.

#### *a.   Plaintiff's requested rate of 18.99%*

Plaintiff argues that the presumed T-bill rate does not provide fair compensation for the use of money in the current economic state of affairs. Specifically, Plaintiff argues that his creditworthiness has been ruined by the Plan's failure to initially pay his benefits and, as a result, he has been forced to use a credit card with an interest rate of 18.99 percent. (Pl.'s Mot. 6:9-10, Dkt. #44; Smyrni Decl. ¶ 7, Dkt. #46.) Plaintiff argues that the government is keeping interest rates artificially low to stimulate the economy, and thus the current T-bill rate of interest would not represent a reasonable return on Plaintiff's investments for the relevant time period when compared with his actual expenses under the 18.99% credit card interest rate. (Pl.'s Mot. 4:19-5:15, Dkt. #44.)

As stated above, the T-bill interest rate under 28 U.S.C. § 1961 "is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Gross-Salomon*, 237 F.3d at 1164. While the undersigned recognizes the District Court has discretion to award a higher rate than § 1961, Plaintiff has provided no legal authority for using a credit card interest rate as an appropriate benchmark for determining prejudgment interest. The undersigned is sympathetic to Plaintiff's financial troubles and recognizes that interest on his back benefits is warranted as an element of compensation. However, Plaintiff has not shown any bad faith or ill will on Defendants' part that might warrant such a departure; in fact, at the January 21 hearing, Plaintiff's counsel stated that bad faith was not a

4

1 factor in this case. And, given that LINA awarded benefits to Plaintiff, the undersigned has no
2 reason to believe otherwise. Moreover, most, if not all, ERISA plan participants whose benefits are
3 terminated suffer financial setbacks as a result, and Plaintiff has not demonstrated that the equities of
4 his situation warrant such a drastic departure from the typical award under 28 U.S.C. § 1961.
5 Accordingly, Plaintiff's argument is unpersuasive.

      *b.*  *Plaintiff's request rate of 10% under the California Insurance Code*

Alternatively, Plaintiff argues that the Court should award prejudgment interest at the rate of 10 percent, borrowing that rate from California Insurance Code Section 10111.2. Pursuant to section 10111.2, interest at the rate of 10 percent will accrue beginning 30 days after payment of disability income is due. Cal. Ins. Code § 10111.2. In support of his argument, Plaintiff cites to *Arnett v. Hartford Life and Accident Ins. Co.,* 2006 WL 5781982 (C.D. Cal. 2006). In *Arnett*, the plaintiff sought a determination of benefits and interest due under ERISA. In awarding prejudgment interest, the court found that "the equities of the case merit the application of the interest rate provided by California Insurance Code § 10111.2." *Id.* at *5. However, that award was justified by the equities present in that case, including the fact that the district court had granted summary judgment in plaintiff's favor after finding that the plan administrator's termination of benefits was "unreasonable," *id.* at *5, and is therefore unpersuasive in the instant context.

Moreover, of the judges in this district that have considered similar arguments in the ERISA context, all have declined to award prejudgment interest under section 10111.2 . *See Minton v. Deloitte and Touche USA LLP Plan*, 631 F.Supp.2d 1213, 1220 (N.D. Cal. 2009); *Langston v. North American Asset Development Corp. Group Disability Plan*, No. 08-2560 SI, 2010 WL 330085, at *9 (N.D. Cal. 2010); *Turnipseed v. Education Management LLC's Employee Disability Plan*, No. 09-3811 MHP, 2010 WL 140384, at *3 (N.D. Cal. 2010); *Gardner v. Bear Creek Corp.*, No. 06-2822 MHP, 2007 WL 2318969, at *20 (N.D. Cal. 2007); *Hyder v. Kemper Nat. Services, Inc.*, No. 05-1782 CW, 2006 WL 2917956, at *1 (N.D. Cal. 2006). Given the clear trend of precedent in this district, the undersigned finds no reason that the present ERISA case warrants the application of a statute governing interest due on claims brought under state law.

5

*c.*     *T-bill rate*

Having considered Plaintiff's arguments, the undersigned must now determine an appropriate interest rate for the circumstances of this case. At a minimum, the undersigned finds that Plaintiff is entitled to a rate of interest that would mirror what he could have earned in the period during which benefits were denied to him. Awarding interest at the T-bill rate from the time of entitlement until the time benefits were actually paid is a reasonable reflection of "the conservative investment income [Plaintiff] would have been able to have earned" had he received payment at the time of entitlement. *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994).

Following the January 21, 2010 hearing, the undersigned ordered the parties to provide a joint statement regarding the annual Treasury bill rate of interest for years 2006-2009, the time during which Plaintiff was denied disability benefits. (Dkt. #76.) For purposes of the discussion herein, the undersigned shall use the average rate for each year as follows:

| Year | Average rate |
| --- | --- |
| 2006 | 4.934% |
| 2007 | 4.53% |
| 2008 | 1.846% |
| 2009 | .415% |

(Dkt. #78.)[1]

In considering the equities of this case, the undersigned finds that it would be an appropriate use of the District Court's discretion to award Plaintiff a higher rate. While there is no evidence of bad faith or ill will on Defendants' part, the undersigned does note that Plaintiff has submitted evidence showing the financial toll suffered by his family as a result of LINA's initial decision to deny benefits. In the two-and-a-half-year period between Plaintiff's initial long term disability

---

[1] Due to inadvertent error, the undersigned did not request the interest rate for 2009. Accordingly, for 2009, the undersigned utilized the website provided by the parties for 2006-2008 and 2010, as it applies to the rates in 2009: http://www.utd.uscourts.gov/documents/int2009.html. The undersigned's calculated rate is based on the average rate between 1/2/2009 and 6/26/2009.

6

application and the eventual award of back benefits, Plaintiff states that he and his family lost their home to foreclosure, he defaulted on his student loans, his car was repossessed, and his and his wife's credit cards have all been cancelled except for a single card on which they pay 18.99 percent interest.  (Smyrni Decl. 2, Dkt. #46.)  Prior to his disability, Plaintiff earned $40,000 annually at U.S. Investigations Services.  (Nalty Decl., Ex. D at 1, Dkt. #64-5.)  While it is not clear that all Plaintiff's financial difficulties are directly related to the initial denial of his application, it is clear that the denial at least helped to create the situation.  Accordingly, in awarding prejudgment interest, the undersigned recommends that the District Court utilize a rate of five percent (5%) in recognition of the equities of this case.  *See, e.g., Hyder*, 2006 WL 2917956, at *1 (finding that the equities of the case demanded that pre-judgment interest be compounded monthly rather than annually to made the plaintiff whole).  Thus, the undersigned recommends that the District Court order Defendants to pay Plaintiff prejudgment interest at the rate of five percent, compounded annually pursuant to 28 U.S.C. § 1961(b).

**B.    Plaintiff's 2006-2008 Tax Returns**

Next, Plaintiff seeks a court order preventing the release of his 2006-2008 tax returns.  LINA seeks the returns to determine if Plaintiff earned income in the time during which he claimed to be disabled.  (Defs.' Opp'n 6:18-23, Dkt. #64).  Defendants believe that Plaintiff earned income during this period based on a denial of Social Security Income payments, and argues that Plaintiff is compelled to produce these tax returns by language explicit in US Investigative Services' group policy.  *Id.* at 6:18-23, 7:14-19.  In support of their argument, Defendants cite to the policy, which provides that "[f]ailure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim.  Such cooperation includes . . . providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due."  (Nalty Decl., Dkt. #63, Ex A page LINA 00260.)

In response, Plaintiff argues that though "the tax returns could be relevant to an investigation into earnings which might affect the amount of benefits due to [him] during the period of time covered by the returns[,] those benefits have already been paid."  (Pl.'s Mot. 8:18-20, Dkt. #44).

7

1 Plaintiff argues that because Defendants have already paid benefits to him for 2006-2008, they
2 cannot retroactively investigate his earnings for that time period and thus are not entitled to his tax
3 returns. *Id.* at 8:22-25.

4 Upon review of the parties' arguments, the undersigned agrees with Defendants. First, as
5 stated above, the policy explicitly permits LINA to seek documents needed to determine whether
6 benefits are payable. Plaintiff provides no legal authority, and the undersigned is aware of none, that
7 excludes tax returns. Second, as to the issue of retroactively investigating earnings for a time period
8 for which benefits have already been awarded, Plaintiff again provides no authority showing that
9 LINA is not entitled to make such a request. In contrast, Defendants cite to *UNUM Life Ins. Co. of*
10 *Am. v. Narut*, 363 F.Supp.2d 1063 (E.D. Wisc. 2005). In *UNUM*, the plaintiff, an ERISA benefits
11 plan administrator, sought a judicial declaration that it had the power to demand tax returns from the
12 defendant, who was receiving disability benefits. The court held that the plaintiff had the power to
13 demand the tax returns, including retroactively for years during which benefits had already been
14 awarded. *Id.* at 1069. In making this determination, the court looked to the language of the relevant
15 plan, which required the defendant to submit such information about his earnings upon request. *Id.*
16 Thus, the undersigned finds that Plaintiff must produce his tax returns for 2006-2008.

17 Plaintiff also states, albeit in one sentence with no legal authority, that he jointly files his tax
18 returns with his spouse. (Pl.'s Mot. 8, Dkt. #44.) From this statement, the undersigned gathers that
19 Plaintiff contends that he should not have to release his tax returns on this ground as well. However,
20 the *Narut* court also addressed this issue, finding unpersuasive the defendant's argument that he
21 could not release his tax returns because he and his wife filed jointly, and she would not permit it.
22 *Id.* at 1069. The court cited the language of Internal Revenue Service Form 4506-T, which requires
23 the signature of only one spouse to release the jointly-filed returns. *Id.* Here, as Plaintiff has also
24 been asked to sign Form 4506-T, (Padway Decl., Ex. 9, Dkt. #45), the undersigned finds no reason
25 to prohibit the release of his tax returns for the limited purpose described above.

26 Additionally, Defendants have offered to stipulate to a confidentiality agreement and
27 protective order in its review of Plaintiff's tax returns. The proposed method of review is that LINA
28

1  would evaluate Plaintiff's tax returns, place a report of the evaluation in Plaintiff's file, then return
2  the tax returns to Plaintiff's counsel without making a copy. This proposal is well-taken. Thus, the
3  undersigned **RECOMMENDS** that the District Court order Plaintiff to produce his 2006-2008 tax
4  returns for review by LINA.

### C. Production of LINA's Claims Manuals

6  Next, Plaintiff argues that he is entitled to production of documents from Defendants, namely
7  LINA's claims manual, policies, and procedures, so that he may determine the guidelines used in the
8  initial denial of his claim. (Pl.'s Mot. 11:7-10, Dkt. #44). Plaintiff relies on 29 C.F.R. § 2650.503-1
9  (h)(2)(iii), which provides that when a claimant appeals an adverse benefit determination, the review
10 that the claimant is entitled to will not be deemed to have been a full and fair review unless the
11 claims procedures provide "access to, and copies of, all documents, records, and other information
12 relevant to the claimant's claim for benefits. Whether a document, record, or other information is
13 relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this
14 section[.]" However, Plaintiff's claim, although initially denied, was subsequently approved on
15 appeal. Accordingly, this argument is without merit and the undersigned recommends that the
16 District Court deny Plaintiff's request.

### D. Production of Defendants' Surveillance Records

18 Finally, Plaintiff argues that Defendants agreed to produce surveillance records but have
19 failed to do so. Specifically, Plaintiff states that Defendants conducted surveillance of him in
20 conjunction with a medical examination they ordered, but the records have not been produced.
21 (Pl.'s Mot. 14, Dkt. #44.) In response, Defendants argue that they provided a CD containing the
22 surveillance footage he requested on September 29, 2009. (Defs.' Opp'n. 11, Dkt. #64.) As
23 Plaintiff did not file a reply and did not raise this issue at the January 21, hearing, the undersigned
24 recommends that the District Court deny this request as moot.

### IV. CONCLUSION

26 Based on the foregoing analysis, the undersigned hereby **RECOMMENDS** that the District
27 Court:

9

1) **ORDER** Defendants to pay prejudgment interest at a rate of five percent (5%), compounded annually, on $70,143 in back benefits paid from May 23, 2006 through June 30, 2009;

2) **ORDER** Plaintiff to produce his 2006-2008 tax returns;

3) **DENY** Plaintiff's request for access to LINA's claims manual and other requested documents as moot; and

4) **DENY** Plaintiff's request for surveillance records as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: February 11, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge